IN THE MATTER OF THE CONTESTED ELECTION OF NOVEMBER 3, 1903, FOR OFFICERS OF THE COUNTY OF OAHU.

C. B. MAILE, J. W. BIPIKANE, GEO. MARKHAM, DAVID KANUHA, WM. KALAEHAO, L. K. SHELDON, A. K. PALEKALUHI, A. ST. C. PIIANAIA, E. W. PALAU, WM. KAAI, WM. H. KAAUWAI, JOSEPH KAUHI, PETER MAKIA, HENRY MAKUAOLE, JOHN K. PRENDERGAST, HULIMOKU KANIO, G. K. LAANUI, A. W. PAOO, S. K. KANALU, SAMUEL KAILI, KEAWE NAWAHIE, D. KAHOALEWAI, W. B. KALEIKUMAKO'A, GEO. HAFFEN, AUKAI, G. W. WAIANUHEA, HALALO PU, D. W. KAMALIIKANE, KAHUILA, IOANE KAHI-

APO, KEWAHIKU, C. A. HERRING, D. KALILI, D. KANAKAOLE, PUHIA, HENRY PELEKANE, WM. PAE, S. K. MAKEKAU, S. K. AKI, KUNIHI, SAM KAOHELE, Petitioners.

MARK P. ROBINSON, JOHN LUCAS, FRANK H. HARVEY, A. HOCKING, J. A. GILMAN, J. M. KEALOHA and S. K. MAHOE, Supervisors; ARTHUR M. BROWN, Sheriff; HARRY E. MURRAY, Clerk; C. P. IAUKEA, Tax Assessor; ISAAC H. SHERWOOD, Auditor; WILLIAM T. RAWLINS, District Attorney; S. E. DAMON, Treasurer; CHRIS J. WILLIS, Surveyor; JOHN EFFINGER (Chairman), HARRY MACFARLANE and STEPHEN UMAUMA, Inspectors of Election, Fourth District, First Precinct; F. P. McINTYRE (Chairman), ALBERT WATERHOUSE and J. P. KAHAHAWAI, Inspectors of Election, Fourth District, Third Precinct; A. F. COOKE (Chairman), E. K. LILIKALANI and J. MAHONEY, Inspectors of Election, Fourth District, Fifth Precinct; WILL E. FISHER (Chairman), FRED TURRILL and GEORGE E. SMITHIES, Inspectors of Election, Fourth District, Eighth Precinct; H. COBB ADAMS (Chairman), E. L. KAUAI and E. P. AIKUE, Inspectors of Election, Fifth District, First Precinct; A. W. CROCKETT (Chairman), J. H. KEANU and JOS. KEKUKU, Inspectors of Election, Fifth District, Second Precinct; W. G. ASHLEY (Chairman), KAUKA WILLIAMS and JOHN E. KAHOA, Inspectors of Election, Fifth District, Sixth Precinct; H. C. BIRBE, JR. (Chairman), JOHN KAAEAE and BENJAMIN KANIEHALAU, Inspectors of Election, Fifth District, Seventh Precinct;

MORENA HULA (Chairman), ASA KAULIA and E.
P. SULLIVAN, Inspectors of Election, Fifth District,.
Eighth Precinct; A. W. NEELY (Chairman), S. H.
KAMEAKAPU and C. F. ALEXANDER, Inspectors
of Election, Fifth District, Ninth Precinct, Respondents.

ORIGINAL.

SUBMITTED DECEMBER 7, 1903. DECIDED DECEMBER 10, 1903.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

In view of Secs. 454-455 of Act 31, Laws of 1903 (the County Act),
which provide for contests of county elections in general by can-
didates and in Circuit Courts, such contests cannot be instituted
by electors or in the Supreme Court.

In Secs. 465-466 of said Act, which make "all of the provisions of law"
applicable to the first county election, those words refer to pro-
visions of law other than those contained in that Act itself, and
not to Secs. 454-455 of that Act, which provide for contests of
county elections in general by candidates and in the Circuit
Courts.

Section 109 of the rules and regulations for holding elections was
repealed by the Organic Act in so far as it made the decisions of
Inspectors of Elections as to the validity of ballots subject to
revision by the Supreme Courts.

Section 8 and the following sections of Act 8 of the Laws of 1894-5
(C. L., Sec. 1092 et seq.) relating to contests of elections in the
Supreme Court, related to legislative elections alone and were
repealed by the Organic Act.

The provisions of law which formerly gave to the Supreme Court
jurisdiction in election cases, having been repealed, were not made
applicable to the first county election by the provision of the
County Act that "all of the provisions of law" should be so
applicable.

In construing a doubtful statute, the court may take into consid-
eration the title of the statute, the context, other statutes in pari
materia and the circumstances under which the statute was
enacted.

OPINION OF THE COURT BY FREAR, C.J.

This is a proceeding to contest the election for officers of the
County of Oahu held on the third day of November—the first

election under Act 31 of the Laws of 1903, commonly known as the County Act. One of the respondents demurred and most of the others filed pleas to the jurisdiction of this court. The remainder were given leave to answer if the jurisdiction of the court should be sustained.

The laws on the subject of elections in this Territory are in general: (1) the provisions of the Organic Act upon that subject; (2) the rules and regulations for holding elections (C. L., Appendix) specifically continued in force, with certain modifications, by Section 64 of the Organic Act; (3) Act 8 of the Laws of 1894-5, as amended by Act 11 of the Laws of 1896, (relating to election frauds and contests) continued in force by the general terms of Section 6 of the Organic Act, in so far as it is not inconsistent with the Constitution or Laws of the United States or the Organic Act; and (4) the provisions of the County Act, above mentioned, upon the subject of elections, consisting mainly of Sections 427-470 of that Act, which in general purport to make previously existing laws, with various modifications, applicable to county elections.

This proceeding is brought under Section 8 and following sections of Act 8 of the Laws of 1894-5 (C. L., Sec. 1092 *et seq.*) in so far as those sections are made applicable to county elections by the terms of the County Act. There are two portions of the latter Act that bear upon the question. The first is Chapter 82 entitled "Contests," and is a portion of Title 7, which relates to county elections in general. It consists of two sections, as follows:

"Section 454. Save as herein otherwise provided, any candidate for any County office may contest any election therefor in the manner provided by law.

"Section 455. In all contests relative to County officers the petition required by law to be filed in the Supreme Court shall be filed in the Circuit Court in such County, and such Circuit Court shall have such jurisdiction relative to such contests as is given to the Supreme Court by law. It shall report its findings and judgment relative thereto to the Board of Supervisors of the County, which shall have the same powers

relative thereto as are by law vested in the Minister of the Interior."

It is clear that these sections furnish no authority for this proceeding, because, among other reasons, the petition is brought by thirty voters, not by a candidate as required by Section 454, and it is brought in the Supreme Court, not in the Circuit Court as required by Section 455.

The other portion of the County Act bearing upon the question consists of Sections 465-466, which are a portion of Chapter 83 (in Title 8), which provides for this first election under the County Act.   These sections read as follows:

"Section 465.   All of the provisions of law relating to general elections are hereby declared to be applicable to such election.

"Section 466.   All of the provisions of law are hereby declared to be applicable to such election, except that all records or information thereby required to be forwarded to any sheriff, shall instead be forwarded to the Secretary of the Territory."

The first question naturally suggested by these sections is whether the "provisions of law" which they make applicable to this first election refer to or include the provisions contained in the County Act itself upon the subject of elections in general or relate solely to the provisions of law previously in force upon the subject of elections.   If they relate to the provisions in the County Act itself they include the provisions of Sections 454-455, above set forth, in which case the latter provisions would require contests as to the first election as well as to elections in general under this Act to be instituted only by candidates and only in the Circuit Courts.   But in our opinion the "provisions of law" mentioned, refer only to provisions previously in force.   This would be natural.   Moreover, the words "provisions of law," as used in Section 465, are qualified by the words "relating to general elections" and the words "general election" are used in other sections of this same chapter as unmistakably applying to Territorial elections alone (see Sections 462-463), and most of the remaining sections in the chapter contain expressions that seem to indicate that the laws relating to Territorial elections alone were intended to be re-

ferred to. Further, the last sentence of Section 455 above quoted tends to show that those sections (454-455) relating to contests were intended to be applicable after there were Boards of Supervisors capable of acting, that is, on and after January 4, 1904 (Sec. 471). And, lastly, the general scheme seems to have been to provide wholly for the first election in chapter 83, and to provide for subsequent elections alone in Title 7 (Chapters 74-82, Secs. 427-455).

The next question is whether, if the words "provisions of law" in sections 465-466 refer solely to the laws previously in force relating to Territorial elections, there are any such laws providing for contests of this kind that could be made applicable to county elections. There are two provisions that are relied on. One is section 109 of the rules and regulations for holding elections (C. L., p. 821), which reads as follows:

"All questions as to the validity of any ballot shall be decided immediately, and the opinion of a majority of the Inspectors shall be final and binding, subject to revision by the Supreme Court as herein provided."

This section in terms provides for a "revision by the Supreme Court" but only "as herein provided." The only part that answers the description "as herein provided" is Section 4 (C. L., p. 787) which reads:

"In case any election to a seat in either house is disputed and legally contested, the Supreme Court shall be the sole judge of whether or not a legal election for such seat has been held; and, if it shall find that a legal election has been held, it shall be the sole judge of who has been elected."

But this provision was expressly repealed by Section 64 of the Organic Act. And, although a similar provision was inserted in that Act as originally drafted, it was finally struck out and the following provision substituted therefor:

"Sec. 15. That each house shall be the judge of the elections, returns and qualifications of its own members."

Whether any portion of said Section 109 remains in force or not, we need not undertake to say, but in our opinion the provision therein relating to revisions by the Supreme Court is not.

The other provision in previous laws that is relied on for contests of elections in the Supreme Court is Section 8 and following sections of Act 8 of the Laws of 1894-5, as amended by Act 11 of the Laws of 1896, (C. L., Sec. 1092 *et seq.*). This provides in terms for contests by thirty qualified voters, as well as by candidates, and in the Supreme Court, and sets forth what may be contested and the procedure. The only question is whether this provision was in force when the County Act was enacted, so as to be capable of being made applicable to this county election by a general provision that "all of the provisions of law," &c., should be so applicable. In other words, was this a provision of "law" at that time? There can be no doubt that it was repealed by the Organic Act in so far as it provides for contests, in the Supreme Court, of elections of Senators and Representatives, for that Act, as already stated, expressly repealed the provision of the rules and regulations. for elections which made the Supreme Court judge of legislative election cases, and expressly conferred such jurisdiction upon the respective houses of the legislature. It also (in Sec. 7) expressly repealed the Constitution of the Republic, which contained a provision similar to that just referred to in the said rules and regulations, and (in Sec. 6) continued in force only such laws as were not inconsistent with the Organic Act. Under a provision "that each house shall be the judge of the elections, returns and qualifications of its own members," the jurisdiction of each house is exclusive. *Harris v. Cooper,* 14 Haw. 145, 148; *Bingham v. Jewett,* 66 N. H. 383; *Wheeler v. Board,* 94 Mich. 448. Cases of this kind must be distinguished from those in which the courts merely require executive officers. to perform ministerial duties under the election laws, which is not a usurpation of the jurisdiction vested in the respective houses of the legislature, but is often an aid to that jurisdiction. *Id.* To make the jurisdiction of the respective houses of the legislature exclusive it is not necessary that there should be a provision that each house shall be "sole" judge, or that there should be other equivalent words. Even if it were necessary ordinarily that there should be words of exclusion in order to

exclude the jurisdiction of the courts, it is clear in this case from all the action taken by Congress that it was the intention of Congress to exclude the jurisdiction of the courts. It may be added that if the petitioners were obliged to rely merely on the general jurisdiction of the courts in election cases in so far that is not clearly taken away, they would not properly be in this court. In such case they should have applied to a court of general original jurisdiction, not to an appellate court.

Since therefore the provisions now relied on in Act 8 of the Laws of 1894-5 (C. L., Sec. 1092 *et seq.*) were not in force so far as elections of members of the Legislature were concerned when the County Act was enacted, it remains to be considered whether they were in force as to other elections, if any. This seems to us to be the crucial point in this branch of the case. Sections 465-466 of the County Act, which are relied on, merely make applicable to county elections the provisions of law then in force as to other elections. The only provisions of law relating to other elections which permit election contests in the Supreme Court have been repealed in so far at least as elections to the Legislature are concerned. If these provisions related solely to elections to the Legislature, they have been repealed *in toto*. If they did not relate to other elections, if any, at the time, they are not now made applicable to county elections. They were undoubtedly enacted with special reference to elections to the Legislature. There were no other elections provided for at that time or contemplated. There were no county or municipal governments here and none were contemplated at that time. And yet, may not an Act passed primarily for legislative elections be broad enough to apply to other elections, when they may be provided for, even though there were no other elections at the time, to which it was applicable, and no elections at all—even legislative elections— to which it could apply during a certain period—in this instance, from the enactment of the Organic Act to the enactment of the County Act—and even though the Legislature did not contemplate any other elections at the time? Let us assume that that would be possible. But was such the case here?

Said Act 8 consists of two parts. One part includes the first six sections and relates to offenses against the election laws. It is Chapter 86 of the Penal Laws. That part clearly was not repealed by the Organic Act even as to legislative elections and doubtless is made applicable to county elections by the terms of the County Act, even if it would not be applicable of itself. The other part includes the other ten sections and relates to contested elections. It is Chapter 77 of the Civil Laws.

The title of the Act is, "An Act Relating to Elections and Contested Seats in the Legislature." There is no doubt that the portion of this title which relates to "contested seats" is limited to contested seats in the Legislature. If the portion relating to "elections" is likewise limited by the words "in the Legislature" there is an end of the whole matter. But let us assume that it is not so limited, and that the title may be read as if it were, "An Act Relating to All Elections and to Contested Seats in the Legislature." If the title were merely, "An Act Relating to Elections," meaning "all elections," it would be broad enough to include contests of all such elections. Whether the addition of the last portion of the title necessarily limited, under the constitutional provision then in force as to titles of acts, the part of the Act relating to contested seats to contests as to legislative elections we need not say. Let us assume that the words "and contested seats in the Legislature" in the title may be regarded as surplusage and that the first part of the title "relating to elections" is broad enough to cover contests of any or all elections, so as at least to prevent our holding that the Act violated that constitutional provision, so far as contests of other than legislative elections are concerned. Still, can the Act be read as desired by the petitioners, as a matter of construction?

Looking at the question merely as one of construction, the "title may be resorted to for the purpose of ascertaining the meaning of the body of the Act; but especially is this true" when there is a provision like that found in Section 45 of the Organic Act. *Myer v. Car. Co.*, 102 U. S. 1, 12. The title

in the present case certainly goes very far to show that only contests of legislative elections were intended. Furthermore, as already stated, there were no other elections provided for or contemplated when the Act was passed. There were, moreover, no laws that could apply of their own force to any other elections at that time, even if other elections should be provided for. The provisions on elections, which were quite extensive, in the Constitution of the Republic, then in force, by their own terms clearly applied to legislative elections alone. The rules and regulations for holding elections likewise applied exclusively to legislative elections. For instance, in Section 1 (C. L., p. 786) it was provided that " 'Election' shall refer to and mean any election for Senators or Representatives herein provided for." Similarly as to "candidate." *Id.* Looking at the portion of Act 8 itself relating to contested elections, we find, all through, the nomenclature of the provisions of the constitution and of the said rules and regulations relating to elections, and references to said rules and regulations and seats in the Legislature, and the first section of this portion of the Act (C. L., Sec. 1091), which sets forth the causes for vacating a seat, clearly refers to legislative elections alone. This portion, indeed, seems to have been intended to provide a procedure for the exercise of the new jurisdiction—that over election cases—then recently transferred by the Constitution from the respective houses of the Legislature to the Supreme Court. It is doubtful if the Legislature would have conferred similar original jurisdiction on the Supreme Court over county election contests even if there were county elections then. It is true that the Act contains some expressions that are general in their terms and that taken by themselves might cover county elections, but there was no occasion to expressly confine them to legislative elections under the circumstances, and they must be read in the light of the other parts of the Act, its title, other laws *in pari materia* and the circumstances under which the Act was passed. Taking all these things into consideration, it is our opinion that the Act was not intended to apply to contests other than those arising out of legislative elections, and

that such intention is sufficiently expressed, and that the court is without jurisdiction in this case.

The petition is dismissed with costs.

*T. McCants Stewart and C. W. Ashford* for petitioners.

*Deputy Attorney General E. C. Peters* and *W. T. Rawlins* for respondents, except as follows:

*H. Hogan* for H. C. Birbe, Jr.; *E. M. Watson* for F. Harvey; *W. A. Whiting* for C. P. Iaukea.